THE PEOPLE *ex rel.* Lewis E. Ijams, Collector,

*v.*

J. A. MEYERS *et al.*

*Filed at Springfield March 28, 1888.*

1. SPECIAL ASSESSMENTS—*under Drainage law—benefits—of their distribution and apportionment—the statute construed.* Taxes levied for drainage purposes are required to be distributed or apportioned among the different tracts of land, according to the classification to be fixed by the commissioners. The land owner has the right of appeal from the assessment of benefits to his land, and the judicial determination of that question is conclusive as to the amount of benefits his land will receive, and he can not be required to pay anything beyond such amount. An assessment under the Drainage act, in excess of the benefits, is void as to such excess.

2. The commissioners of a drainage district required a certain amount to be levied upon the lands in the district, according to their classification, which was done, and on appeal to the county court the sums assessed against the lands of those appealing were considerably reduced. In the meantime the Auditor of Public Accounts certified to the county clerk, as provided by law, the amount necessary to be raised to pay interest on bonds

which had been issued under the Drainage law, and incidental expenses, and the clerk apportioned this tax among the several tracts in the district according to their benefits, as shown by the original assessment thereof, the appeal not having yet been tried. On application for judgment, the assessment not having been paid, the county court sustained an objection to the tax, and reduced the same so as to make it conform to the amount of benefits as fixed by the judgment of the county court, on the trial of the appeal: *Held*, that the reduction as made by that court was proper and right.

APPEAL from the County Court of McLean county; the Hon. C. D. MEYERS, Judge, presiding.

Messrs. TIPTON & BEAVER, and Mr. E. A. WALLACE, for the appellant.

Messrs. FIFER & PHILLIPS, and Mr. JAMES S. EWING, for the appellees.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

Esterbrook Special Drainage District No. 1, in McLean county, was duly organized in 1882, under the general Drainage act. The district includes within its boundaries parts of four different townships. The lands within it were properly platted and classified by the commissioners, as required by section 21 of the act of 1885, and no appeal was taken by appellees from the classification as finally corrected, and it is conceded by their counsel that the same is still in full force and effect. On the 28th of July, 1886, to meet the estimated cost of the entire improvement, the commissioners levied a tax of $30,000 on the lands within the district, which was properly certified and duly extended against the several parcels, according to acreage and the ratio of benefits, as fixed by the classification already established. The gross amounts charged to appellees, when so extended, were, respectively, as follows: J. A. Myers, $710.66; Thomas B. Creigler, $195.09; A. N. Brittin, $1144.16; H. Merritt, $1270.36; William Moore, $348.18; O. A. Green, $435.55; Oscar Willis, $599.14; C. Or-

endorff, $180.26. From these assessments, appellees severally took appeals to the county court, where the cause was tried by a jury, resulting in a verdict greatly reducing the amounts. Myers' was reduced to $150; Creigler's to $40; Brittin's to $400; Merritt's to $300; Green's to $50; Orendorff's to $40; Willis' to $300, and Moore's to $50; and the court entered judgments for these reduced amounts. In the meantime the district had issued and negotiated interest bearing bonds to raise funds to meet the expenses of the proposed improvement, as provided by the act, and they had been filed with the Auditor of the State for registration. On the 8th of November following, the Auditor certified, as required by law, to the county clerk of McLean county, that the interest on said drainage bonds, together with the costs of collecting and disbursing the same, amounted to $2027, and directed him to apportion the same against the lands within said district. This the clerk did, according to the acreage and ratio of benefits, as fixed by the established classification of the same. Indeed, it could not have been done in any other way at that time, as the judgments in the county court reducing the original assessments on this basis were not rendered until in April, 1887, some five months later. Appellees refused to pay the taxes thus extended against their lands, and they were accordingly returned by the county collector as delinquent. On application by him for judgment, it was contended by appellees, that the assessment should be so reduced as to make it conform to the amount of benefits, as fixed by the judgments of the county court. This contention of appellees was sustained by the court, and judgments were entered against the lands accordingly. Whether the county court erred in thus holding, presents the only question to be determined on the present appeal.

We have no serious doubt as to how the question should be decided. The only difficulty encountered in its considera-

tion consists in the fact that there is an apparent repugnance in some of the provisions of the statute bearing upon it. In every instance where taxes are authorized to be levied for drainage purposes, the statute expressly directs that they shall be distributed or apportioned among the different parcels of land, according to the graduated scale or classification to be fixed by the commissioners, and the statute in this respect has been literally complied with. While this is true, the statute at the same time gives to each land owner the right to appeal from an assessment and apportionment so made, for the purpose of questioning the amount of benefits charged against his land. The appellees availed themselves of this right, and it resulted, as we have seen, in a large reduction, in each case, of the amounts respectively assessed against them. That the judgments, on appeal, thus reducing the assessments, are conclusive as to the amount of benefits, and that appellees, in no event, can be required to pay anything beyond them, is too clear to admit of serious question. It is also equally clear that an assessment under the Drainage act in excess of the benefits, is simply void as to such excess. Notwithstanding all this, in making a subordinate assessment under the act, we find no provision in it expressly authorizing the substitution of the judgments for the corresponding amounts fixed by the original apportionment; yet the right, or rather duty, to make such substitution, must be inferred from the very necessity of the case, and to prevent a manifest failure of justice.

Since, as we have just seen, the full measure of appellees' liability is irrevocably fixed by the judgments, it is manifest that if the court below had not adopted them as the basis of its findings, the appellees would have been compelled to pay more than their proportionate share of the installment of taxes then due. This, of course, was not admissible, and any construction of the statute leading to such results can not be accepted as the true one. This view, which certainly is the only one that can be accepted, may, and probably will, result

in hardships to those who did not appeal from the original assessment. This will certainly be the case, assuming the commissioners' classification of the lands, and the judgments on appeal from the assessment, are both right. And this we must do, since the first is conceded to be right, and the second, being *res judicata*, can not be questioned. The error, theoretically at least, we must assume, was in fixing the total amount of benefits. But what the real fact as to this is, of course no one can tell. It is a matter of pure conjecture, but as no appeal was taken from the classification or the judgments, they are both, for the purposes of this suit, conclusively presumed to be correct, whatever the real facts may be. As to the apparent hardship upon those who did not appeal from the assessment, the answer of course is, that they had the same right of appeal that appellees had, and if they neglected to exercise it, it is their own fault. The most serious trouble, however, is the fact that the course matters have taken will probably leave the district between $3000 and $4000 short of funds with which to meet their bonded indebtedness. This will certainly be the case, assuming that the lands of those not appealing from the assessment were assessed to the full amount of the benefits, of which there can be but little, if any, doubt. But these are matters, however much to be regretted, we are powerless to alleviate or control. Nor is any remedy perceived, so long as the judgments on appeal from the original assessment remain unreversed, or are not otherwise set aside.

The judgment will be affirmed.

*Judgment affirmed.*